IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JACQUELINE LANGFORD, INDIVIDUALLY AND
ON BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES OF ALAN LEE LANGFORD
DECEASED, ET AL.                                                                                   PLAINTIFFS

v.                                             CIVIL ACTION NO.: 1:24-cv-159-GHD-JMV

JAMES DAVID MILHORN, INDIVIDUALLY AND AS
NEXT FRIEND OF HIS MINOR CHILD, C.M., ET AL.                          DEFENDANTS

## ORDER GRANTING MOTION TO STAY

This matter is before the court on the motion of Defendants James Milhorn and his minor son C.M. to stay the instant civil case against each of them [13]. The Plaintiffs have responded in opposition [24] to the motion and Defendants have timely replied [26]. For the following reasons, the Motion to Stay is GRANTED until *the earlier of* a verdict or plea in the parallel criminal matter or March 30, 2025, provided that the stay is not sooner extended on a motion found to be meritorious prior to that date.

This case arises from a motor vehicle collision that occurred in Prentiss County, Mississippi during the early morning hours of May 11, 2024. As alleged in the complaint, C.M., a minor at the time, was driving a vehicle owned by his father, James Milhorn. C.M. crossed the center line and crashed into a vehicle driven by Alan Lee Langford and occupied by his minor son, Jacob Langford, as a passenger. Alan Lee Langford died at the scene of the accident as a result of his injuries, and Jacob Langford suffered severe injuries. The collision gave rise to the following proceedings:

1) On May 15, 2024, the federal government filed criminal charges in this Court for aggravated DUI and involuntary manslaughter against C.M. based on the collision. The

1

arraignment occurred on June 5, 2024, and C.M. was released on bond pending trial. On July 23, 2024, this Court entered a Superseding Indictment based on the Grand Jury's charges for two counts of aggravated DUI and one count of involuntary manslaughter. C.M. waived his appearance at the subsequent arraignment and entered a not guilty plea for all charges contained in the Superseding Indictment. Trial was initially set for November 18, 2024, but as the undersigned appreciates it, on joint motion of the parties, the trial has been continued until January 13, 2025.

2) On August 5, 2024, Jacqueline Langford, the wife of Alan Lee Langford and mother of Jacob Langford, filed the instant civil action in the Circuit Court of Prentiss County, Mississippi. The claims against C.M. are for negligence and gross negligence in causing the collision; against James Milhorn for negligent entrustment as the owner of the vehicle C.M. was driving at the time of the accident; and against The Standard Fire Insurance Company under the Plaintiff's Uninsured/Underinsured Motorist policy. The Defendants removed the action to this Court on August 23, 2024, based on diversity of citizenship [1].

## A. Legal Standards

The parties agree on the applicable standard for a stay of civil proceedings in deference to parallel criminal proceedings. That standard is a discretionary one which stems from a district court's inherent power to manage its own docket and dispose of cases "'with economy of time and effort for itself, for counsel, and for litigants.'" *Rogers v. Tallahatchie Gourmet, L.L.C.,* 2019 WL 6736224, at *2 (N.D. Miss. Dec. 11, 2019) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). In exercising that discretion, the court recognizes that because there is no "general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions, the "default rule", and strong

presumption, is that the civil and criminal actions proceed together. *SEC v. First Fin. Grp.*, 659 F.2d 660, 668 (5th Cir. 1981); *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 758, 761 (W.D. Tex. 2008); *Thomas v. City of Benoit*, Civil No. 4:18-cv-00115-GHD-JMV at *2 (N.D. Miss. Oct. 24, 2018) (quoting *United States v. Gieger Transfer Serv.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997)). Nevertheless, both parties correctly acknowledge that a movant may overcome the presumption in favor of civil and criminal cases proceeding together by showing there exist "'special circumstances,' making a stay appropriate so as to prevent the defendant from suffering substantial and irreparable prejudice." *Rogers*, 2019 WL 6736224, at *2 (quoting *First Fin. Grp..*, 659 F.2d at 668).

In the Fifth Circuit, to determine whether a movant has established that a stay is warranted, the court weighs six factors: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by the delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public's interest." *Id.*, *see, e.g., Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, 2015 WL 893447, at *9 (E.D. La. Mar. 2, 2015).

It is in the application of these factors to C.M. and separately to his father, James Milhorn, that the parties strenuously disagree.

**B. Defendants' Arguments in Support of Stay**

The Defendants argue, in support of a stay of this civil case against C.M. that the first two factors ((1) the extent to which the issues in the criminal case overlap with those presented in the civil case; and (2) the status of the criminal case, including whether the defendant has been indicted) warrant a stay where the movant shows the "two proceedings will so overlap that either

(1) he cannot protect himself in the civil proceeding by selectively invoking his Fifth Amendment privilege, or (2) effective defense of both [the criminal and civil cases] is impossible." *Alcala v. Tex. Webb Cnty.,* 625 F. Supp. 2d 391, add direct cite to page # (S.D. Tex. 2009). In the instant case, the movants assert that there is significant overlap in the issues between the two cases as demonstrated by a comparison of the "nearly identical" factual allegations set forth in the superseding indictment in the criminal matter and in the instant civil complaint.[1]

In fact, both the parties recognize that, "[t]he similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." *Id.* (quoting *State Farm Lloyds v. Wood*, 2006 WL 3691115, at *2 (S.D. Tex. Dec. 12, 2006)). And, in this case, Defendants assert that as the alleged facts are virtually identical, it would be impossible for C.M. to selectively invoke his Fifth Amendment right against self-incrimination during the civil discovery process as "every question would naturally relate to the

---

[1] To demonstrate, the movants cite the following facts within the Superseding Indictment and civil complaint, respectively:

"On or about May 11, 2024, in the Northern District of Mississippi, C.M., at or near mile marker 285 on the Natchez Trace Parkway: C.M. did operate a motor vehicle upon said roadway while under the influence of a substance which had impaired his ability to operate a motor vehicle, to wit: alcohol, and in the process did, in a negligent manner, cause the death of [Alan Lee Langford]; did knowingly kill [Alan Lee Langford] … in the commission of … operating a vehicle in violation of the law by operating in a careless manner, failing to maintain control of his vehicle, and failing to yield the right of way; and did operate a motor vehicle upon said roadway while under the influence of a substance which had impaired his ability to operate a motor vehicle, to wit: alcohol, and in the process did mutilate, disfigure, permanently disable and destroy a limb, organ or member of a minor."
*See* Superseding Indictment
versus
"On or about May 11, 2024, Alan Lee Langford, (hereinafter "Alan Langford") was traveling northbound on the Natchez Trace Parkway in Prentiss County, Mississippi. Jacob Langford was occupying Alan Langford's vehicle as a passenger. On the same date and at the same time, Defendant C.M. was traveling southbound on the Natchez Trace Parkway in Prentiss County, Mississippi. Defendant C.M. was driving under the influence of alcohol and at an excessive rate of speed as his vehicle approached Alan Langford's. Defendant C.M.' s vehicle crossed the center line and struck the vehicle in front of Alan Langford's in the side before striking Alan Langford's vehicle in the front, resulting in a head-on collision. Defendant C.M. negligently operated his vehicle without care or concern of other motorists on the roadway. He failed to keep a proper lookout and operated his vehicle in a careless manner, endangering other vehicles on the road. Defendant C.M. negligently, recklessly, and with deliberate indifference to the lives of others, operated his motor vehicle in an inebriated condition and under the influence of intoxicating substances in violation of the laws of the State of Mississippi."
*See* Complaint [Dkt 1.]

same set of facts relevant in the criminal case." Defs' Br. [14] at 8. According to defendants, C.M. would effectively be forced to choose between preserving his constitutional right and an effective defense in his civil case.

In addition, Defendants argue C.M.'s criminal defense would be prejudiced by the more liberal discovery rules applicable in civil cases, as described by the *Alcala* Court:

> If a court does not stay a parallel civil action, then the civil case might undermine the defendant's Fifth Amendment privilege against self-incrimination by expanding rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), by exposing the basis of the defense to the prosecution in advance of criminal trial, or by prejudicing the criminal case through other means.

*Alcala,* 625 F. Supp. 2d at 400 (S.D. Tex. 2009).

As for the third factor to consider, a plaintiff's private interests to proceed expeditiously weighed against the prejudice a delay may cause, Defendants argue Plaintiffs' interests would not be impacted greatly because, as noted, C.M. has been indicted and his case set for trial on January 13, 2025. On the other hand, this civil action is in the early stages, and according to Defendants, Plaintiff might benefit if the criminal discovery proceeded first, as it would narrow the issues within the civil case and allow for a more streamlined approach in the civil case. This would, in turn, reduce the time it would take the Plaintiffs to prosecute their civil case against C.M.

As to the fourth factor, "the private interests of Defendant C.M. in securing a stay and the burden that would result if the stay is denied"[2], Defendants rely on the same arguments as those they advance with respect to Factors 1 and 2. Namely, Defendants argue that the resulting burden on C.M. of "being compelled to choose between invoking his Fifth Amendment rights or jeopardizing his defense in the civil suit, when an adverse inference may be drawn from [his]

---

[2] *Bean v. Alcorta*, 220 F. Supp. 3d 772, 777 (W.D. Tex. 2016) (citing *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.,* 571 F. Supp. 2d 758, 762 (W.D. Tex. 2008)).

5

silence" is great. Defs' Br. [14] at 10; *see Gonzalez*, 571 F. Supp.2d at 765 (citing *S.E.C. v. AmeriFirst Funding, Inc.*, , 2008 WL 866065, at *4 (N.D. Tex. Mar. 17, 2008)). The Defendants argue that the burden of the more liberal scope of civil discovery together with the impracticality of asserting the Fifth Amendment selectively where the facts on which the criminal and civil cases against C.M. are virtually identical weigh in favor of a stay of the civil action.

With respect to the 5th and 6th Factors, the interests of the court and the public respectively, Defendants argue that assuming there is a conviction in the criminal case following a plea or trial, that could "contribute significantly to the narrowing of issues in dispute in the overlapping civil case and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges." *Thomas*, 2018 WL 5284615, at *4 (N.D. Miss. Oct. 24, 2018) (quoting *In re Worldcom, Inc. Sec. Litig.*, 2002 WL 31729501, at *8 (S.D.N.Y. Dec. 5, 2002). Also, as for the public's interest, Defendants point out that the Fifth Circuit has recognized that the distinction between civil and criminal actions requires a government policy determination of which case should be tried first. And, that administrative policy gives priority to the public's interest in law enforcement. *Campbell v. Eastland*, 307 F. 2d 478, 487 (5th Cir. 1962). Defendants argue that this priority is so strong that the "plaintiff's interest in proceeding in the case without delay is 'subservient to law enforcement's prerogative' once an indictment has been issued." *Id.* (quoting *Lee v. Ackal*, 2016 WL 1690319, at *4 (W.D. La. Apr. 25, 2016).

Because this civil action seeks to impose liability not only on C.M., but also on his father, James Milhorn, for negligent entrustment, Defendants seek also to have the civil case stayed as against him as well. In support of that argument, they assert that even though James Milhorn does not face any criminal prosecution in connection with this collision, and thus, does not face the same threat as C.M. to his Fifth Amendment rights, nor does he experience the multiple issues in

6

defending both a criminal case and civil case effectively if the negligent entrustment action proceeds against him, the remaining factors for the Court's consideration weigh in favor of also staying the Plaintiffs' civil case against him. In particular, Defendants argue that the degree of issue overlap, the Court's interests and the interests of the public outweigh any relatively short delay occasioned by a stay of this case.[3]

On issue overlap, specifically, Defendants assert the Plaintiffs' Complaint applies the same core set of universal facts surrounding the collision—C.M.'s intoxication and reckless driving—to the claim for the negligent entrustment against James Milhorn. The only additional allegations the Plaintiff applies exclusively to the negligent entrustment action are that James Milhorn is jointly and severally liable for all damages proximately caused by C.M.'s negligence because James Milhorn "knew or should have known of Defendant C.M.'s propensity and proclivity to drive in an illegal, unlawful, negligent and/or reckless manner." Defs' Br. [14] at 13.

As for the interest of the Court, Defendants contend staying this case against James Milhorn as well as C.M. would serve the interest of judicial economy since, again, prosecution of the criminal action first would streamline and narrow the matters both the parties and the Court would have to resolve in the civil case, and any short delay would be made up for by a lesser amount of investigation, discovery, and procedural disputes in the civil case created by the narrowing of issues as a result of the criminal case.

Defendants also argue that the same clear benefit to the public's interest is created by giving priority to the criminal case irrespective of which defendant is being pursued in the parallel civil proceeding.

---

[3] As noted, the trial is set for January 13, 2025.

Lastly, Defendants again assert a stay of the case as to James Milhorn would not greatly diminish the Plaintiffs' ability to prosecute their negligent entrustment action because the criminal action has already advanced to the point of an indictment and a fast-approaching trial date, meaning any stay in the civil case would be limited. On the other hand, if the case were stayed as to C.M. only, the parties and witnesses in the civil case might well be subjected to duplicative discovery once the stay of the civil case against C.M. was lifted.

### C. Plaintiffs' Arguments Against Stay

Plaintiffs argue against a stay of the civil action, asserting that even though the factual allegations of the civil and criminal case as to C.M. overlap (at least to a degree), one of the primary purposes in Plaintiffs' bringing of the civil complaint is to undertake discovery to ascertain whether there are any *other* parties that may be liable for this collision. For example, they contend there are potential claims against unknown parties such as a dram shop claim and a negligence *per se* and strict liability claim for the furnishing of alcoholic beverages to a minor that discovery might uncover, and those claims are separate from C.M.'s alleged negligence in operating the vehicle. To this end, Plaintiffs assert they "have a significant interest in proceeding expeditiously with discovery as evidence may go missing, memories may fade, and potential defendants may abscond if the civil case against C.M. is stayed until the resolution of the criminal proceedings against him." Pls' Br. [25] at 6.

Further, they contend that C.M. can selectively assert his Fifth Amendment rights in the civil action as to discovery concerning his alleged negligence, while allowing Plaintiffs to pursue discovery of him concerning the circumstances leading up to his alleged intoxication and to ultimately add those persons to the civil suit as defendants. Plaintiffs also contend that a conviction of a C.M. as a result of the entry of a plea or following a trial will not actually contribute to the

8

narrowing of issues in this civil case or promote settlement of the same, because, again, "the primary issue" in the civil case for Plaintiffs is to identify unknown parties who may be liable for the accident irrespective of the outcome of the criminal case against C.M. Pls' Br. [25] at 5.

As for James Milhorn, Plaintiffs contend no stay of this civil suit is warranted because "[t]here is absolutely no overlap in the issues in this case against [him] and the criminal action against C.M." and thus, no concern over the invocation of the Fifth Amendment, selective or otherwise. *Id.* at 8. And "[a]ny potential subjection of duplicative discovery [as the result of a stay of the civil suit only as against C.M.], pales in comparison to the prejudice Plaintiffs will suffer from a delay in the proceedings if evidence is lost or if witnesses abscond or are no longer able to recall certain events." *Id.* at 9.

Finally, as for judicial efficiency and the public's interest, Plaintiffs contend the same weigh in favor of allowing the civil case to proceed against James Milhorn, irrespective of a stay of the civil case against C.M., since "in no scenario does waiting for the resolution of the criminal proceedings against C.M. streamline the issues against James Milhorn and any potential unknown defendants." *Id.* at 10. This, Plaintiffs contend, is because "the issue of negligent entrustment will not be addressed in C.M.'s criminal trial and neither will the liability of any parties who furnished him with any alcohol." *Id.*

**D. Defendants' Reply**

By way of reply, Defendants counter that Plaintiffs' reasoning is flawed in that the overlap of issues between the criminal and civil case is not a comparison of the criminal indictment to the Plaintiffs' subjective motive in filing the civil action (to ascertain whether there are any other parties that may be liable for this collision.) The focus, rather, is on a comparison of the criminal

9

case to the "issues presented" by the civil case, which are those that underlie the actual cause of action the Plaintiffs filed against C.M.—for negligence in causing the subject accident.

And, to the extent Plaintiffs suggest they would in fact not seek discovery in the civil case on the matter of C.M.'s alleged negligence in causing the accident if permitted to continue prosecution of the civil case, Defendants point out that at least in so far as the existing defendants and claims in the civil case are concerned, they are centered on C.M's fault in causing the accident, making discovery on some other subject irrelevant as the current civil case stands.

**E. The Court's Analysis of the Six Factors**

**(1) The extent to which the issues in the criminal case overlap with those presented in the civil case**

There is unquestionably significant overlap in the facts and circumstances underpinning the civil and criminal cases in their present status, and while the future may, or may not, reveal facts or circumstances that give rise to other parties and civil claims which arguably overlap less with the pending criminal charges against C.M., the present civil claims—and in the case of C.M.—the very same party in both the civil and criminal proceeding, are overwhelmingly overlapping. Thus, this, the acknowledged "most important threshold issue in determining whether to grant a stay of this civil action," weighs significantly in favor of the stay. Further, while all parties acknowledge that the other defendant to this civil action, James Milhorn, is not subject to the criminal prosecution faced by C.M., as a practical matter, many of the same facts and circumstances discoverable and at issue with regard to his potential civil liability are the same as those that undergird the criminal prosecution.

**(2) The status of the criminal case, including whether the defendant has been indicted.**

Much like the first factor, there is little room for discussion of whether this factor weighs in favor of a stay of this case—the criminal case is set for trial as early as January 2025, meaning,

10

at least as things currently stand, that a stay of this civil case is likely quite modest in length. Moreover, and as discussed below, in the event the criminal case is delayed substantially beyond its current setting, the stay of this action will automatically lift absent a meritorious motion to extend the stay prior to its expiration.

### (3) The private interests of the Plaintiffs in proceeding expeditiously, weighed against the prejudice to them caused by the delay.

On this factor, I again find the Defendants have the more persuasive argument. Plaintiffs' principal argument appears to be that the passage of time during a stay may interfere with their ability to learn facts and circumstances that might give rise to civil claims not yet asserted and against persons/establishments not yet made parties due to failing witness memories and loss of evidence, but I note that the subject collision happened as recently as only five months ago and the criminal case is set for trial in the next two months. In short, there is really very little time for memories to fail or lapse as concern the facts and circumstances of this horrific loss.

### (4) The private interests of and burden on the defendant(s).

Here again, it appears the Plaintiffs' principal argument against a stay is that is that they can ameliorate such obvious concerns as the Fifth Amendment right against self-incrimination and the adverse inference its exercise may give rise to in a civil case by only, at least initially, seeking discovery on issues not pivotal to the criminal prosecution of C.M. However, I find such an approach impractical on its face. Among numerous issues that arise would be the impossible complexity etc. of deposing witnesses on only some subject matters to only have to repeat the depositions of those same witnesses on other relevant areas later. Not to mention the fact that absent a stay, parties are free to pursue in discovery not only such information as may ultimately be admissible on the issue of a given party's liability, but *all* evidence reasonably calculated to lead to the discovery of admissible evidence (provided it is proportional to the needs of the case).

11

*See* Fed. R. Civ. P. 26. I also note that the impracticality of some sort of a piecemeal stay is the same as applied to the civil claims against James Milhorn both for the reason that permissible discovery related to the claims against him will no doubt include some facts and circumstances giving rise to the civil negligence and criminal claims against C.M., and to the necessity for redundant depositions/discovery from the same witnesses.

**(5) The interests of the courts and the (6) public.**

I am convinced in this case that given the totality of the circumstances discussed herein, the concerns of all the parties presently before the court and the court's and public's interest in the effective and efficient administration of cases before it are best addressed by the imposition of a modest stay of this case.

**Conclusion**

Accordingly, I find that the six factors weigh in favor of a stay of all proceedings in this case until *the earlier of* a verdict or plea in the parallel criminal matter or March 30, 2025, provided that the stay is not sooner extended on a motion found to be meritorious prior to that date.

Therefore, the Motion to Stay is **GRANTED.**

**SO ORDERED**, this the 19th day of November, 2024.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**